## Stewart *v.* Stewart.

[No. 21,684.   Filed March 30, 1911.]

1. TRIAL.—*Limiting Scope of Cross-Examination.*—The trial court should limit the cross-examination to the facts brought out on direct examination.   p. 413.

2. WITNESSES.—*Bias.—Prejudice.—Cross-Examination.*—On cross-examination any fact tending to impair the credibility of the witness may be shown, the scope of the cross-examination being largely discretionary with the trial court.   p. 414.

3. TRIAL.—*Exclusion of Evidence.—Subsequent Admission of.*—No error is committed in excluding evidence, where such evidence is subsequently admitted.   p. 414.

4. TRIAL.—*Admission of Evidence.—Objections.*—The overruling of objections to the admission of evidence, as well as the overruling of a motion to strike out the answer given, furnishes no ground for complaint, where no grounds of objection were stated.   p. 414.

5. TRIAL.—*Admission of Evidence.— Harmless Error.— Appeal.*—The admission of improper evidence which does not harm appellant is not a ground for reversal.   p. 414.

6. TRIAL.—*Admission of Evidence Without Objection.*—The admission of evidence without objection furnishes no ground of complaint.   p. 415.

7. TRIAL.—*Admitting Improper Evidence of Handwriting.—Subsequent Acknowledgment of Writing.*—The admission of improper evidence showing that defendant wrote certain cards is harmless, where defendant subsequently acknowledged such writing.   p. 415.

8. APPEAL.—*Briefs.—Points.—Failure to Note Evidence therein.*—Appellant's failure, in his brief, to note the objectionable evidence, among his points, is a waiver of such alleged error.   p. 415.

9. DIVORCE.—*Cruel and Inhuman Treatment.—Accusation of Unchastity.—Acts Occurring After Separation.*—Where a husband and wife lived together, though at times unhappily, until their children had grown to maturity and were married, the placing, by the husband, of obscene cards in the yard, and the marking of eggs in a hen's nest, so as to charge his wife with unchastity,

and so placed that his children would see them, constitute grounds for a divorce, though such acts were committed after their final separation but before the divorce proceeding was instituted. pp. 415, 418.

10. DIVORCE.—*Public Policy.*—Public policy forbids easy divorces. p. 417.

11. DIVORCE.—*Alimony.—Amount of.—Attorneys' Fees.*—Alimony in the sum of $7,866, together with $500 for attorneys' fees, is not excessive, where the defendant's property was valued at $24,-000, and where the parties had lived together, though at times unhappily, for almost forty years, had reared a family, and where his charges of her unchastity had caused the separation. p. 418.

From Gibson Circuit Court; *Herdis Clements*, Judge.

Suit by Bertha S. Stewart against William H. Stewart. From a decree for plaintiff, defendant appeals. *Affirmed.*

*John W. Brady* and *Oscar M. Welborn*, for appellant.
*Thomas Duncan* and *J. M. & S. L. Vandeveer*, for appellee.

MORRIS, J.—Appellee sued appellant for divorce and alimony. The complaint charged the husband with cruel and inhuman treatment, among other things alleging that he struck and beat plaintiff, and falsely and maliciously charged that she was an unchaste woman. There was an answer of general denial, with a trial and judgment in favor of appellee, awarding divorce and decreeing her alimony in the sum of $7,866, and the further sum of $500 for her attorneys' fees. From this judgment appellant appeals. His motion for a new trial, overruled by the court, assigns twenty-one reasons therefor.

One of the causes was the alleged error of the trial court in sustaining an objection to the following question asked the plaintiff on her cross-examination as a witness in her own behalf: "During your married life did you not frequently accuse your husband of misconduct with other women?" The court sustained appellee's objection, because it was not cross-examination.

It is not error to restrict the cross-examination to the subject-matter of the original examination. *Patton* v. *Hamilton* (1859), 12 Ind. 256; *Eacock* v. *State* (1907), 169 Ind. 488;

*Hunsinger* v. *Hofer* (1887), 110 Ind. 390; *City of Aurora* v. *Cobb* (1863), 21 Ind. 492. While on cross-examination, any fact tending to impair the credibility of the witness, by showing his interest, bias, ignorance, motives or character, may be shown, but the extent to which such examination may be carried is within the sound discretion of the trial court. *Dotterer* v. *State* (1909), 172 Ind. 357, and cases cited. In this case, appellant could not have been harmed by the ruling anyway, because, after the controverted ruling was made, the same question was asked the witness, and answered, without objection. *Beatson* v. *Bowers* (1910), 174 Ind. 601.

One Lounsdale, witness for appellee, was asked if he ever saw appellant make any demonstration towards her son, Warner. Appellant objected to the question, but stated no ground therefor. The objection was overruled, and after two other questions were asked and answered, appellant made a motion to strike out the answer. The motion was overruled. There was no error in this. It was the duty of counsel to state the ground of objection to the question before the court made the ruling. *Cleveland, etc., R. Co.* v. *Wynant* (1893), 134 Ind. 681; *Ginn* v. *State* (1903), 161 Ind. 292, and cases cited. The eighteenth reason assigned for a new trial is the alleged error in admitting in evidence certain testimony of Mrs. Wilson, a witness for appellee. No objection was made to the question eliciting the testimony.

Another of the grounds for a new trial was the action of the court in permitting the following question to be answered by witness Phillips, over the objection of appellant: "Did you have a conversation with Doctor Stewart relative to extending credit to his wife?" Answer by witness: "My recollection is that he did, some time ago." The answer did not disclose any fact harmful to appellant.

It is insisted that the trial court erred in permitting ap-

pellee to testify that the rental value of her dwelling-house was $20 a month. No objection was made to the question that elicited the information. The record discloses a like failure to object to a question complained of, which was asked of appellee's witness, Skeavington.

Objection is made that appellee was erroneously permitted to prove by Ed Stewart that certain writing on a card was in the handwriting of appellant. If there was error it was harmless, for afterwards appellant testified that the handwriting was his.

One of the grounds specified in the motion for a new trial, and discussed in the argument in appellant's brief, was the erroneous admission in evidence, over appellant's objection, of certain testimony of George Moore. The error, if any, was waived by appellant's failure to note it in the statement of "Points" in his brief. Rule twenty-two of this court.

Counsel for appellant most earnestly contend that the decision of the trial court is not sustained by sufficient evidence and is contrary to law. The evidence given at the trial disclosed that the parties were married in 1870, when appellee was nineteen, and appellant twenty-seven years of age. He was a physician, and engaged in the active practice until 1891. After that he was engaged in farming and merchandising until about 1902, since which time he has not been in active business. Six children were born to them, two of whom are dead. The other four are married. The youngest child, a daughter twenty-seven years old, lived on a lot adjoining the place of residence of these parties. The final separation occurred July 16, 1909. On that date appellee left home, and went to her daughter's residence, about fifty feet away, and has since resided there. The husband remained in the family residence, with one of the sons. The parties had, during their married life, quarrelled frequently, and had separated on two or three occasions. At one time appellant, after a

quarrel, left home and remained away about six months. At another time, he went to Florida and stayed three or four months. Both parties were high-tempered, and in their frequent quarrels the wife was not afraid to uphold her side of the controversy, and at times both exhibited unjustifiable anger. The husband struck the wife only once, and that was twenty-three years ago, and the evidence would not warrant the conclusion that the wife feared, or had reason to fear, that the husband would inflict bodily injury upon her. Twenty-five or thirty years before the final separation, the wife accused her husband of marital infidelity. Her suspicions, on which she based the accusation, were groundless, but some indiscreet conduct on his part might be said to have excused the wife. During the last twenty-five years she had not charged him with infidelity.

About a month after the separation, and three months before appellee filed her complaint for divorce, a number of cards were placed in conspicuous places on the premises, where they would likely be seen by appellee and her children, especially the married daughter, and which were seen by both mother and daughter. Two eggs were placed in a hen's nest, from which appellee was accustomed to gather eggs. On one of these eggs were some written words, and a picture so obscene that we do not deem it necessary nor desirable further to describe it. On the cards appeared written words unnecessary to repeat here. The writing on the cards, and the picture, charged appellee, in a most offensive way, with unchastity. The writing on the cards and eggs, and the making of the picture on the egg, were the deeds of appellant. These cards and eggs were placed by him at different times in places where he believed they would be seen by his wife, and where they probably would be seen by some of their children. He admits the base conduct, and says that at the time he had no ground to suspect his wife's virtue, and did not, in fact, suspect it, but he did the acts, as he says, because he was angry, and

she had taunted and insulted him, and he did it as he says to " throw back " at her.

Counsel for appellant concede that unfounded and malicious charges of adultery by a husband against a wife ordinarily justify a decree of divorce for cruel and inhuman treatment, but that when such charges were made after separation, and after like charges had been made by the wife against the husband, and were otherwise provoked by the wife, a decree is not justified. It is true, these charges were made about a month after the separation. However, this suit was not instituted for about three months after the charges were made, and had it not been for the cruel accusations there might have been a reconciliation as before, when other separations occurred. Her charges against him were made twenty-five years before, and, under the circumstances, she might have been excused by his own indiscreet conduct. *Beach* v. *Beach* (1896), 4 Okla. 359.

"Cruel and inhuman treatment," one of the statutory causes for divorce in Indiana, is, like negligence, a relative term, and of necessity must depend upon the circumstances of each particular case. *Bailey* v. *Bailey* (1867), 97 Mass. 373. Among half civilized and brutal people, blows might be exchanged between married couples, who, in the main, are happy and have no desire to part. Nor should a false and malicious charge of adultery be held, in all cases, such cruel and inhuman treatment as would justify divorce. In all cases the character and condition of the parties and their surroundings should be considered.

We quite agree with counsel for appellant, that frequently our trial courts are too liberal in granting decrees of divorce on the ground of cruelty, and that public policy re-

10. quires that the marital relation shall not be severed, families disrupted, and innocent children deprived of the companionship, counsel and affection of both parents, without adequate cause. *Alexander* v. *Alexander* (1895), 140

Ind. 555; *Yeager* v. *Yeager* (1909), 43 Ind. App. 313; *Barnett* v. *Barnett* (1901), 27 Ind. App. 466.

In this case, after nearly forty years of wedded life, after appellee had borne to her husband six children, there is flaunted in the face of a virtuous wife, in the presence of her children, a charge likely to cause more exquisite mental torture than any other which fiendish ingenuity might devise. This is cruel and inhuman treatment within the meaning of our statute, under the circumstances here. *Graft* v. *Graft* (1881), 76 Ind. 136; *Eastes* v. *Eastes* (1881), 79 Ind. 363. We do not believe that because appellee sometimes exhibited undue anger, or because at the time the husband made the false charges of unchastity the parties were separated, the decree of divorce was unjustified. It was proper for the trial court to consider such facts, together with all the other facts in evidence, in order to determine the validity of the charge of cruel treatment. *MacDonald* v. *MacDonald* (1909), 155 Cal. 665, 102 Pac. 927, 25 L. R. A. (N. S.) 45. But with these facts considered, we cannot say that the trial court erred in its conclusions.

Finally, appellant contends that the judgment for alimony was excessive. There was evidence that appellant's property was worth about $24,000. We cannot say that, under the evidence, the court abused its discretion in the allowance of alimony and attorneys' fees. *Musselman* v. *Musselman* (1873), 44 Ind. 106; *Hedrick* v. *Hedrick* (1891), 128 Ind. 522; *Stutsman* v. *Stutsman* (1903), 30 Ind. App. 645; *Boggs* v. *Boggs* (1910), 45 Ind. App. 397.

Judgment affirmed.